IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SAMUEL LYN REAVES, | § | |
| TDCJ No. 02363039, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | No. 3:24-cv-1631-K-BN |
| | § | |
| KEVIN SMITH ET AL., | § | |
| | § | |
| Respondents. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Through a *pro se* application for a writ of habeas corpus under 28 U.S.C.

§ 2254, *see* Dkt. Nos. 1, 10, Petitioner Samuel Lyn Reaves challenges his Johnson

County convictions for Driving While Intoxicated (3rd or More, Habitual Felon)

("Felony DWI") and Retaliation. *See State v. Reaves*, No. DC-F201700692 (18th Dist.

Ct., Johnson Cnty., Tex. Sept. 17, 2021). United States District Judge Ed Kinkeade

referred Reaves's habeas petition to the undersigned United States magistrate judge

for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

Reaves pled not guilty. *See* Dkt. No. 22-1 at 22. On September 17, 2021, Reaves

was convicted after a jury trial of Felony DWI and Retaliation and acquitted of a third

count (Attempt to Take Weapon from an Officer). *See id.* at 22-23, 345-48. Reaves was

sentenced by the jury to 99 years in prison for Felony DWI and 25 years in prison for

Retaliation to run concurrently. *See id.* at 23, 363-66, 391, 397.

Reaves appealed. *See id.* at 375. The direct appeal raised two issues – the

sufficiency of the evidence for each of his convictions. *See* Dkt. No. 22-21. The Eighth

Court of Appeals affirmed. *See Reaves v. State*, No. 08-21-00186, 2022 WL 17851678 (Tex. App.—El Paso Dec. 22, 2022) [Dkt. No. 22-24]. The Texas Court of Criminal Appeals refused his petition for discretionary review ("PDR"). *See Reaves v. State*, No. PD-0038-23 (Tex. Crim. App. Mar. 29, 2023) [Dkt. No. 22-28].

On January 30, 2024, Reaves filed a state habeas petition *pro se* alleging multiple claims combined in seven grounds. *See* Dkt. No. 24-29 at 60-81. The petition was "denied without written order" by the Texas Court of Criminal Appeals on April 17, 2024. *See In re Reaves*, No. WR-33,535-09 (Tex. Crim. App. Apr. 17, 2024) [Dkt. No. 24-32]. Reaves filed a second state habeas petition on May 31, 2024. *See* Dkt. No. 24-37 at 32-47. The second petition was dismissed as subsequent under Texas Rule of Criminal Procedure article 11.07, section 4. *See In re Reaves*, No. WR-33,535-10 (Tex. Crim. App. June 19, 2024) [Dkt. No. 24-38].

Reaves filed his application for a writ of habeas corpus in this Court on June 27, 2024. *See* Dkt. No. 2.[1] He filed an amended application on June 28, 2024. *See* Dkt. No. 10.

The Court ordered the State to respond. *See* Dkt. No. 13. The State responded. *See* Dkt. No. 30. And Reaves filed a reply. *See* Dkt. No. 40.

---

[1] Reaves attached the brief submitted with his second state habeas petition as one of the exhibits to his application for a writ of habeas corpus in this Court and referenced the attached exhibits generally as the facts supporting his habeas grounds. *Compare* Dkt. No. 24-37 at 55-86, *with* Dkt. No. 1 at 45-76. The State's response largely references the grounds in that brief and as it appears that Reaves intended to incorporate the brief by reference into his federal habeas petition, the undersigned will follow the State in liberally construing it as a brief in support of the federal habeas petition.

And the undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should deny federal habeas relief.

## Legal Standards

"Federal habeas features an intricate procedural blend of statutory and caselaw authority." *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019). In the district court, this process begins – and often ends – with the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), under which "state prisoners face strict procedural requirements and a high standard of review." *Adekeye*, 938 F.3d at 682 (citation omitted). This is because, "[u]nder AEDPA, state courts play the leading role in assessing challenges to state sentences based on federal law." *Shinn v. Kayer*, 592 U.S. 111, 124 (2020) (per curiam).

So, where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The statute therefore "restricts the power of federal courts to grant writs of habeas corpus based on claims that were 'adjudicated on the merits' by a state court," *Shinn*, 592 U.S. at 112 (citation omitted). And, "[w]hen a state court has applied clearly established federal law to reasonably determined facts in the process of adjudicating a claim on the merits, a federal habeas court may not disturb the state

court's decision unless its error lies 'beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Further, "[u]nder § 2254(d)," the reasonableness of the state court decision – not whether it is correct – "is '"the only question that matters."'" *Id.* at 124 (quoting *Richter*, 562 U.S. at 102); *accord Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold."); *Grace v. Hooper*, 123 F.4th 800, 807 (5th Cir. 2024) ("AEDPA 'respects the authority and ability of state courts and their dedication to the protection of constitutional rights,'" so where "fairminded jurists might disagree…, that is precisely why federal habeas relief cannot be granted.") (quoting *Shoop v. Hill*, 586 U.S. 45, 48 (2019))); *Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019) ("[T]his is habeas, not a direct appeal, so our focus is narrowed. We ask not whether the state court denial of relief was incorrect, but whether it was unreasonable – whether its decision was 'so lacking in justification' as to remove 'any possibility for fairminded disagreement.'" (citation omitted)).

A state court adjudication on direct appeal is due the same deference under Section 2254(d) as an adjudication in a state post-conviction proceeding. *See, e.g.*, *Dowthitt v. Johnson*, 230 F.3d 733, 756-57 (5th Cir. 2000) (a finding made by the Court of Criminal Appeals on direct appeal was an "issue … adjudicated on the merits in state proceedings," to be "examine[d] … with the deference demanded by AEDPA" under "28 U.S.C. § 2254(d)"). And nothing "in AEDPA or [the Supreme] Court's

precedents permit[s] reduced deference to merits decisions of lower state courts." *Shinn*, 592 U.S. at 121 n.2 (citing 28 U.S.C. § 2254).

Starting with Section 2254(d)(1), a state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the [AEDPA] prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

"A state court unreasonably applies clearly established Supreme Court precedent when it improperly identifies the governing legal principle, unreasonably extends (or refuses to extend) a legal principle to a new context, or when it gets the principle right but 'applies it unreasonably to the facts of a particular prisoner's case.'" *Will v. Lumpkin*, 978 F.3d 933, 940 (5th Cir. 2020) (quoting *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000); citation omitted). "But the Supreme Court has only clearly established precedent if it has 'broken sufficient legal ground to establish an asked-for constitutional principle.'" *Id.* (quoting *Taylor*, 569 U.S. at 380-82; citations omitted).

As noted above, "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as

fairminded jurists could disagree on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted); *see also Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no

further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).

This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (Section 2254(e)(1) "'deference extends not only to express findings of fact, but to the implicit findings of the state court.' As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." (footnotes omitted)).

And, even if the state court errs in its factual findings, mere error is not enough – the state court's decision must be "*based* on an unreasonable factual determination…. In other words, even if the [state court] had gotten [the disputed] factual determination right, its conclusion wouldn't have changed." *Will*, 978 F.3d at 942.

Further, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Richter*, 562 U.S. at 98; *see Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the

written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)); *see also Hughes v. Vannoy*, 7 F.4th 380, 387 (5th Cir. 2021) (observing that a federal habeas court also "must 'carefully consider all the reasons and evidence supporting the state court's decision'" and that a decision that "does not explain its reasoning does not affect [federal habeas] review," as federal courts "are required to 'determine what arguments or theories could have supported the state court's determination' and examine '*each* ground supporting the state court decision'" (footnotes omitted)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). And, while "AEDPA sets a high bar," it is "not an insurmountable one." *Hughes*, 7 F.4th at 392. To surmount it, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. That is, in sum, a petitioner must "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217; *see also Hughes*, 7 F.4th at 392 (Federal courts "are obligated to correct" those "rare 'extreme malfunctions in the state

criminal justice system.'" (quoting *Dunn v. Reeves*, 594 U.S. 731, 739 (2021) (per curiam))).

## Analysis

I.    Reaves has procedurally defaulted claims that were not raised in his PDR or first state habeas petition.

Because "state courts play the leading role in assessing challenges to state sentences based on federal law," *Shinn*, 592 U.S. at 124, a state petitioner must fully exhaust state remedies before seeking federal habeas relief. *See* 28 U.S.C. § 2254(b)(1)(A); *Loynachan v. Davis*, 766 F. App'x 156, 159 (5th Cir. 2019) ("A federal court may not grant habeas relief unless the petitioner 'has exhausted the remedies available in the courts of the State.'" (quoting 28 U.S.C. § 2254(b)(1)(A))).

This entails submitting the factual and legal basis of any claim to the highest available state court for review in a procedurally correct manner. *See Satterwhite v. Lynaugh*, 886 F.2d 90, 92-93 (5th Cir. 1989).[2]

Texas prisoners must present their claims to the Court of Criminal Appeals in

---

[2] *See also Nickleson v. Stephens*, 803 F.3d 748, 753 (5th Cir. 2015) ("The exhaustion doctrine demands more than allusions in state court to facts or legal issues that might be comprehended within a later federal habeas petition. The exhaustion doctrine is based on comity between state and federal courts, respect for the integrity of state court procedures, and 'a desire to protect the state courts' role in the enforcement of federal law.'" (quoting *Castille v. Peoples*, 489 U.S. 346, 349 (1989) (quoting, in turn, *Rose v. Lundy*, 455 U.S. 509, 518 (1982)))); *Loynachan*, 766 F. App'x at 159 ("To determine whether a § 2254 petitioner has exhausted a claim, his federal claim should be compared with the claim he raised in state court 'It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made.' 'Rather, the petitioner must afford the state court a "fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.'" This reflects the fact in the habeas system, state courts are provided the first opportunity to assess the claim." (citations omitted)).

a petition for discretionary review or an application for state post-conviction relief. *See Bautista v. McCotter*, 793 F.2d 109, 110 (5th Cir. 1986). "A petitioner need merely press a claim through one of these avenues to exhaust that claim. [But, t]o exhaust a claim, it must also be presented in a procedural context in which state courts necessarily review the claim on the merits." *Loynachan*, 766 F. App'x at 159 (citations omitted); *see also Campbell v. Dretke*, 117 F. App'x 946, 957 (5th Cir. 2004) ("'The exhaustion requirement is satisfied when the substance of the habeas claim has been fairly presented to the highest state court' so that a state court has had a 'fair opportunity to apply controlling legal principles to the facts bearing on the petitioner's constitutional claim.'" (quoting *Soffar v. Dretke*, 368 F.3d 441, 465 (5th Cir. 2004))).

And unexhausted claims should be found procedurally barred if "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Texas law precludes successive habeas claims except in narrow circumstances. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4. This is a codification of the judicially created Texas abuse-of-the-writ doctrine. *See Barrientes v. Johnson*, 221 F.3d 741, 759 n.10 (5th Cir. 2000). Under this state law, a habeas petitioner is procedurally barred from returning to the Texas courts to exhaust his claims unless the petitioner presents a factual or legal basis for a claim that was previously unavailable or shows that, but for a violation of the United States Constitution, no rational juror would

- 11 -

have found for the State. *See id.* at 758 n.9.

Therefore, unexhausted claims that could not make the showing required by this state law would be considered procedurally barred from review on the merits in this Court unless an exception is shown. *See Beazley v. Johnson*, 242 F.3d 248, 264 (5th Cir. 2001). An exception to this procedural bar allows federal habeas review if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Reaves has already attempted to file a second state habeas application that the Court of Criminal Appeals dismissed as successive, *see* Dkt. No. 24-38, and "nothing in its perfunctory dismissal of the claims … suggests that it actually considered or ruled on the merits." *Hughes v. Quarterman*, 530 F.3d 336, 342 (5th Cir. 2008). And as to those claims not yet presented to the Court of Criminal Appeals, Reaves has not presented a factual or legal basis for a claim that was previously unavailable or shown that, but for a violation of the United States Constitution, no rational juror would have found for the State.

Specifically, Reaves's claims that his trial counsel were ineffective because it failed to interview Sergeant Smith before trial, failed to strike certain venire members, and failed to argue Reaves was actually innocent were not raised to the Court of Criminal Appeals in a procedurally correct manner through Reaves's PDR or first state habeas petition. And, although Reaves made general and conclusory claims in his first habeas petition that his counsel failed to object to inadmissible

evidence, *see* Dkt. No. 24-29 at 68, 87, there is no mention of the specific evidence Reaves claims was objectionable and irrelevant in section 1.d of Ground One in the brief attached to his original federal habeas petition, *see* Dkt. No. 1 at 16-19. *See Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001) ("It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982)).

Reaves's claims that his sentence is cruel and unusual punishment and violates the sentencing guidelines, that the stenographer's record of his trial is inaccurate, and that the prosecution withheld *Brady* evidence are also procedurally barred without a showing an exception applies. But Reaves has not shown that "cause for the default and actual prejudice exist" nor has he shown that the "fundamental miscarriage of justice" exception to the procedural bar applies.

So those claims should be denied as procedurally barred.

II.    <u>Reaves's actual innocence claims should be denied.</u>

Reaves asserts in Grounds Nine and Ten of his amended petition that he is actually innocent of the charges of Retaliation and Attempt to Take a Weapon from an Officer. *See* Dkt. No. 10 at 10; *see also* Dkt. No. 1 at 71-74. The jury acquitted Reaves of the charge of Attempt to Take a Weapon from an Officer, so any habeas claims related to that charge are moot.

Reaves's claim as to the charge of Retaliation relates to the interpretation of the phrase "public servant" under state law. *See* Dkt. No. 1 at 71-74. But "the proper interpretation of state law is not cognizable in federal habeas proceedings." *Beazley*,

242 F.3d at 261. And, even if Reaves did raise a claim under federal law, convincing actual innocence and fundamental miscarriage of justice claims constitute a gateway to allow a petitioner to overcome the one-year statute of limitations under AEDPA and proceed on the merits. *See McQuiggin v. Perkins*, 569 U.S. 383, 396-98 (2013); *Floyd v. Vannoy*, 894 F.3d 143, 154-55 (5th Cir. 2018). But the Fifth Circuit "does not consider habeas relief based on 'freestanding claims of actual innocence.'" *Floyd*, 894 F.3d at 155 (quoting *In re Swearingen*, 556 F.3d 344, 348 (5th Cir. 2009); *see also Herrera v. Collins*, 506 U.S. 390, 399 ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.").

So Reaves's claims of actual innocence should be denied.

III.    <u>Reaves has not established that his trial counsel was ineffective.</u>

The two-prong test for ineffective assistance of counsel established in *Strickland v. Washington*, 466 U.S. 668 (1984), requires a petitioner to "show that counsel's failure was both (1) objectively deficient and (2) prejudicial." *Crawford v. Cain*, 122 F.4th 158, 160 (5th Cir. 2024) (citing *Strickland*, 466 U.S. at 687).

The first prong "sets a high bar." *Buck v. Davis*, 580 U.S. 100, 118 (2017). To count as objectively unreasonable, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to

affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105); *see also Sanchez*, 936 F.3d at 305 ("As the State rightly puts it, we defer 'both to trial counsel's reasoned performance and then again to the state habeas court's assessment of that performance.'" (quoting *Rhoades*, 852 F.3d at 434)).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

Ineffective assistance claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010); *Adekeye*, 938 F.3d at 682.

Where the state court has adjudicated claims of ineffective assistance on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *see also* *Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)); *Canfield v. Lumpkin*, 998 F.3d 242, 246 (5th Cir. 2021) ("*Strickland* … imposes a high bar on those alleging ineffective assistance of counsel. But 28 U.S.C. § 2254(d) … raises the bar even higher."); *cf. Shinn*, 141 S. Ct. at 525 ("recogniz[ing] the special importance of the AEDPA framework in cases involving *Strickland* claims," since "[i]neffective-assistance claims can function 'as a way to escape rules of waiver and forfeiture,' and they can drag federal courts into resolving questions of state law" (quoting *Richter*, 562 U.S. at 105)).

Several of Reaves's ineffective assistance of counsel claims are conclusory. But "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding." *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983). "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical

issue in his *pro se* petition … to be of probative evidentiary value." *Id.* at 1011. In his amended federal habeas petition, Reaves asserts with no explanation or citation to evidence that his counsel was ineffective because they filed no motions and made no objections, failed to object to the jury instructions, and failed to seek a 38.23 jury instruction. *See* Dkt. No. 10 at 7. These claims are conclusory and should be denied.

Reaves also asserts that his counsel was ineffective for failing to object to his sentence as cruel and unusual punishment. *See* Dkt. No. 1 at 66. That claim is likely procedurally barred since the brief and conclusory mention in Reaves's first state habeas petition of "not a single word to cruel/unusual punishment" did not provide the full factual and legal basis of the claim made here to the state court in a procedurally correct manner. *See Wilder*, 274 F.3d at 259. And Reaves has not shown any exception to the procedural bar applies.

But, even if it is not procedurally barred, Reaves cannot show that the failure to object was deficient performance or a reasonable probability that the result would have been different if counsel had objected to preserve a cruel and unusual punishment claim based on the length of Reaves's sentence. Neither Eighth Amendment precedent on non-capital sentencing nor Texas precedent on habitual DWI offenders supports such an objection. *See, e.g.*, *Ewing v. California*, 538 U.S. 11, 28-29 (2003); *Harmelin v. Michigan*, 501 U.S. 957, 994-96 (1991); *Vrba v. State*, 69 S.W.3d 713, 724-25 (Tex. App.—Waco 2002, no pet.).

And claims that counsel was ineffective for failing to move to quash the indictment or to suppress the blood draw should be denied because those motions are

not supported by the evidence and would have been frivolous.

Reaves claims that counsel should have moved to quash the indictment because the State enhanced Reaves's charge on Felony DWI with both the general enhancement and felony DWI enhancement statutes. *See* Dkt. No. 1 at 64-65. But Texas law allows both enhancements to be used so long as the same prior conviction is not applied to both enhancements. *Cf. Phillips v. State*, 992 S.W.2d 491, 494-95 (Tex. Crim. App. 1999) (en banc) (not ineffective assistance to fail to object to indictment where two DWI convictions were used for both enhancements because, even if those convictions were omitted, other prior convictions alleged in the indictment would have been sufficient to show both enhancements applied). Here, different convictions were used to allege each enhancement. *See* Dkt. No. 22-1 at 25-26. So it would have been frivolous for Reaves's counsel to seek to quash the indictment on that basis.

And, as to the claim related to the motion to suppress the blood draw, the evidence and prior state court findings of fact do not support the claim that the blood draw was conducted without a warrant. *See* Dkt. No. 22-17 at 16; *Reaves*, 2022 WL 17851678, at *2 ("Walters applied for the search warrant to draw Appellant's blood, which a judge granted."). So it would have been frivolous for Reaves's counsel to move to suppress the blood draw.

As to Reaves's claims that his counsel was ineffective for failing to investigate his history of diabetes and schizophrenia or to hire any experts to testify to those issues, Reaves cannot meet his burden to show ineffective assistance of counsel.

Reaves's counsel followed a line of questioning with witnesses indicating that they were aware of Reaves's history of diabetes. In fact, the full exchange with Lindsay Hatfield, the drug section supervisor at the Department of Public Safety Crime Lab in Waco, cited by Reaves in his brief (Dkt. No. 1 at 50) supports that Reaves's counsel was aware of Reaves history of diabetes and asked about the acetone because of that awareness. *See* Dkt. No. 22-18 at 57-58; *see also* Dkt. No. 22-17 at 35-36 (questioning Corporal Walters on diabetes and ketoacidosis).

And Reaves also does not show that his counsel was unaware of his history of schizophrenia. The hearing transcripts reflect that his counsel was aware of his history of mental health issues and competency evaluations and restoration. *See* Dkt. No. 22-14 at 4-5, 8.

And "complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (citing *Bray v. Quarterman*, 265 Fed. App'x 296, 298 (5th Cir.2008). So to make out a claim that counsel was ineffective for failing to call witnesses to testify on these issues, Reaves would need to "demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Id*. Without such a showing, Reaves cannot show prejudice even if he had established deficient performance. *See id*. But Reaves has not made this showing.

And finally, as to Reaves's claims that his counsel was ineffective for withdrawing their request for a competency hearing, the record does not support the claim.

For Reaves to be found incompetent to stand trial, the trial court would have had to find by a preponderance of the evidence that he did not have sufficient present ability to consult with his lawyer or a rational and factual understanding of the proceedings against him. *See* TEX. CRIM. PRO. ART. 46B.003(b). In an ineffective assistance claim for failure to request a competency examination, the petitioner "must show a reasonable probability that the district court would have found [him] incompetent if trial counsel had moved for a competency examination or hearing." *United States v. Israel*, 838 F. App'x 856, 866 (5th Cir. 2020). But Reaves cannot make that showing here because of evidence set out in his last competency evaluation and presented to his trial counsel between the time they requested the hearing and withdrew the request indicating that Reaves was using competency to avoid trial. *See* Dkt. No. 22-1 at 281; Dkt. No. 22-15 at 4.

For these reasons, Reaves's remaining claims of ineffective assistance of counsel should be denied.

IV.    Reaves's claim that his sentence is illegal under the Texas Penal Code is not cognizable on federal habeas review.

Reaves asserts that his sentence is illegal because it was enhanced under both sections 49.09 and 12.42 of the Texas Penal Code, which he argues violates section 49.09(g) of the Texas Penal Code. *See* ECF No. 1 at 75. The claim is addressed above in the context of Reaves's claim that counsel was ineffective for filing to move to quash

the indictment. But as to the legal interpretation issue raised, "the proper interpretation of state law is not cognizable in federal habeas proceedings." *Beazley*, 242 F.3d at 261.

So Reaves's claim as to the interpretation of the enhancement provisions of the Texas Penal Code should be denied.

V.    Reaves's Fourth Amendment claim that the blood draw constituted an unlawful search and seizure is barred.

Reaves's claim that his blood draw was an illegal search and seizure is barred from federal habeas review. *Stone v. Powell*, 428 U.S. 465 (1976), "bars habeas review of Fourth Amendment claims when the state has provided an opportunity for full and fair litigation of the claim .... [And t]he Fifth Circuit applies the bar as long as the state gives the defendant an opportunity to litigate the issue, whether or not the defendant takes advantage of the opportunity." *ShisInday v. Quarterman*, 511 F.3d 514, 524-25 (5th Cir. 2007) (per curiam) (citing *Janecka v. Cockrell*, 301 F.3d 316, 320-21 (5th Cir. 2002)). Because Texas provides a defendant an opportunity to litigate an unlawful search claim and there are no "additional allegations that state processes routinely or systematically are applied in such a way as to prevent the actual litigation of Fourth Amendment claims," the *Stone* bar applies. *Janecka*, 301 F.3d at 321.

So Reaves's claim that the blood draw was an unlawful search and seizure should be denied.

VI.    Reaves's right to a speedy trial was not violated.

"The Sixth Amendment guarantees a defendant 'the right to a speedy and

- 21 -

public trial.'" *Leachman v. Stephens*, 581 F. App'x 390, 402 (5th Cir. 2014) (quoting U.S. CONST. amend. VI). This right "applies to the states via incorporation by the Due Process Clause of the Fourteenth Amendment." *Id.* (citing *Divers v. Cain*, 698 F.3d 211, 215 (5th Cir. 2012)). And whether this right has been violated is "a mixed question of law and fact," which in the current context – federal habeas review of the state court's rejection of a speedy-trial claim – triggers "the deferential standard of 28 U.S.C. § 2254(d)(1)." *Amos v. Thornton*, 646 F.3d 199, 204 (5th Cir. 2011) (per curiam) (footnotes omitted). "Accordingly, [a state prisoner] is entitled to relief only if the state court's rejection of his speedy-trial claim resulted in a decision that was contrary to, or involved an objectively unreasonable application of, clearly established federal law as articulated in the decisions of the Supreme Court." *Id.* (footnote omitted); *see also Russell v. Denmark*, 68 F.4th 252, 263 (5th Cir. 2023) (district court erred in reweighing *Barker* factors rather than giving deference to state court determination).

> "Very few petitioners" can make the requisite showing, and due to the somewhat indeterminate and fact-intensive nature of the speedy trial right, [a federal court's] "always-substantial deference is at an apex." In resolving speedy trial issues, [the Court should] consider: "(1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right to speedy trial, and (4) prejudice to the defendant." These factors are guides that require a delicate balancing.

*Divers*, 698 F.3d at 217 (quoting *Amos*, 646 F.3d at 204-05, 205; citation omitted); *see also Speer v. Lumpkin*, 824 F. App'x 240, 244 (5th Cir. 2020) ("Because [the speedy trial] right is 'amorphous,' 'impreci[e],' 'necessarily relative,' and 'slippery,' the Supreme Court established 'a balancing test, in which the conduct of both the prosecution and the defendant are weighed.' Relevant factors include the length of

the delay, the reason for it, the defendant's diligence in asserting the right, and whether the delay prejudiced the defendant." (quoting *Barker v. Wingo*, 407 U.S. 514, 522, 529-30 (1972), then citing *Vermont v. Brillon*, 556 U.S. 81, 90 (2009))). And "[a]bsent extreme prejudice or a showing of willfulness by the prosecution to delay the trial in order to hamper the defense, a delay of less than one year is not sufficient to trigger an examination of the *Barker* factors." *Cowart v. Hargett*, 16 F.3d 642, 647 (5th Cir. 1994) (internal citation omitted).

Here, although Reaves was arrested in July 2017, indicted in August 2017, but did not go to trial until September 2021, his trial began 78 days after he was found competent to stand trial on June 28, 2021. And as discussed above, evidence in the record indicates that Reaves attempted to prolong and manipulate the competency evaluation and restoration process to avoid trial. *See* Dkt. No. 22-1 at 281; Dkt. No. 22-15 at 4. Further, Reaves has not attempted to explain how he was prejudiced by the delay and has not shown that he was diligent in asserting his speedy trial rights. *See* Dkt. No. 22-1 at 216-18 (*pro se* motion to dismiss for speedy trial violation filed more than 3 years after indictment).

So Reaves's speedy trial claim should be denied.

VII.  <u>Reaves's claims that the state court of appeals committed judicial misconduct and as to ineffective assistance of appellate counsel should be denied.</u>

Reaves's claim that the state court of appeals committed judicial misconduct by denying his motion to be appointed new appellate counsel or represent himself is conclusory and should be denied.

And Reaves's claim that his appellate counsel was ineffective because she did

not communicate with him, refused to raise additional issues, and has a conflict of interest because she has a child by District Attorney Dale Hanna should also be denied. Reaves's claims as to lack of communication and refusal to raise additional issues are conclusory. In particular, Reaves does not set out what issues were not raised. With appellate counsel, "although 'it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, ... it is difficult to demonstrate that counsel was incompetent.'" *Diaz v. Quarterman*, 228 F. App'x 417, 427 (5th Cir. 2007) (per curiam) (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)). And, "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Smith*, 528 U.S. at 288 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986); internal quotation marks omitted).

And as to the conflict-of-interest claim, Reaves must show an actual conflict that adversely affected counsel's performance not "a mere theoretical division of loyalties" and "that the attorney made a choice between possible alternative courses of action" based on this conflict. *Vasquez v. Thayler*, 389 Fed. App'x 419, 431 (5th Cir. 2010) (quoting *Mickens v. Taylor*, 535 U.S. 162, 164 (2002); *United States v. Garcia-Jasso*, 472 F.3d 239, 243 (5th Cir. 2006); cleaned up). But Reaves has not made this showing and has not provided any evidence to substantiate his claim as to the conflict.

So Reaves's claims as to ineffective assistance of appellate counsel should be denied.

## Recommendation

The Court should deny the application for a writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: February 6, 2026

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE